## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

CHARLES AIFUWA EWERE,      )
                              )
        Petitioner,        )
                              )
v.                              )      Case No. CIV-26-320-SLP
                              )
ROBERT CERNA          )
et al.,                    )
                              )
        Respondents.     )

## REPORT AND RECOMMENDATION

Petitioner Charles Aifuma Ewere, a noncitizen,[1] seeks a writ of habeas corpus under 28 U.S.C. § 2241. Doc. 1. United States District Judge Scott L. Palk referred the case to the undersigned Magistrate Judge for initial proceedings under 28 U.S.C. § 636(b)(1)(B), (C). Doc. 8.[2] Petitioner also filed a motion for a preliminary injunction. Doc. 11. Respondents have responded to each, and Petitioner has likewise replied to each. Docs. 10, 16, 18, 19. So they are at issue.

---

[1]     This Report and Recommendation "uses the term 'noncitizen' as equivalent to the statutory term 'alien.'" *Nasrallah v. Barr*, 590 U.S. 573, 578 n.2 (2020) (citing 8 U.S.C. § 1101(a)(3)).

[2]     Citations to a court document are to its electronic case filing designation and pagination. Except for capitalization, quotations are verbatim unless otherwise indicated.

The Court should consolidate Petitioner's motion for preliminary injunction with a decision on the merits of the habeas petition. *See* Fed. R. Civ. P. 65(a)(2) ("Before or after beginning the hearing on a motion for preliminary injunction, the court may advance the trial on the merits and consolidate it with the hearing."). And, for the reasons below, the undersigned recommends the Court grant the petition and order Petitioner's immediate release.

## I.    Factual background and procedural history.

Petitioner, a Nigerian citizen, maintains he and his family are Christians who do not believe in female genital mutilation against the expectations of traditional community members. Doc. 11, at 3. His daughter was kidnapped and forced to undergo female genital mutilation and died from the attack. *Id.* at 4. After her death, the Eweres received threats of beatings because of their disrespect for the community culture. *Id.* The family fled Nigeria as a result. *Id.* at 5.

Petitioner entered the United States on March 15, 2022, near Del Rio, Texas. Doc. 10, Ex. 3. Two days later, Immigration and Customs Enforcement (ICE) paroled him into the United States under 8 U.S.C. § 1182(d)(5). Doc. 1, at 2; Doc. 11, at 3. Petitioner sought asylum on March 6, 2023. Doc. 10, Exs. 1, 2. ICE placed Petitioner into standard removal proceedings on December 10, 2024, but did not revoke his parole or return him to custody. *Id.* Since his

2

release in 2022, he has shown up for every check-in, maintained lawful employment, held a valid driver's license, and has no criminal history. *Id.* at 3. He did not violate any condition of his release. *Id.* During a regular check-in on January 21, 2026, ICE detained Petitioner "without any allegation of misconduct, violation of conditions, or any material change in circumstances." *Id.*

ICE has charged Petitioner under 8 U.S.C. §1182(a)(6)(A)(i) (INA § 212(a)(6)(A)(i)), and 8 U.S.C. § 1182(a)(7)(A)(i)(I) (INA § 212(a)(7)(A)(i)(I)) as an applicant for admission allegedly lacking valid immigrant entry documents and as a noncitizen "present in the United States without being admitted or paroled." Doc. 1, at 4; *see* Doc. 10, Ex. 3, at 4.

## II.   Petitioner's claims.

Petitioner raises three grounds for relief:

Ground One: violation of the INA;

Ground Two: violation of the Administrative Procedure Act (APA), 5 U.S.C. § 706(2)(A); and

Ground Three: Violation of his Fifth Amendment right to due process.

Doc. 1, at 19-24. In sum, he argues that the revocation of his parole without a pre-deprivation hearing and his continued detention without an individualized bond hearing violates the INA, the APA, and his due process rights by

depriving him of his constitutional liberty that accrued during the three plus years he was living in the United States. *Id*. at 2-3, 17-18; *see also* Doc. 11, at 5-6, 10-12; Doc. 16, at 4-8.

Petitioner asks this Court to (1) Order that Respondent produce all documents related to Petitioner's detention, including but not limited to, the I-213–Record of Deportable/Inadmissible Alien, Form I-862–Notice to Appear (NTA), I-200–Warrant for Arrest of Alien, and I-286–Notice of Custody Determination; (2) Issue a Writ of Habeas Corpus requiring that Respondents release Petitioner or, in the alternative, provide Petitioner with a bond hearing pursuant to 8 U.S.C. § 1226(a) within seven (7) days; (3) Declare that Petitioner's detention is unlawful; and (4) Order that Respondents are enjoined from re-detaining Petitioner under 8 U.S.C. § 1225(b). Doc. 1, at 25.[3]

---

[3]    In his motion for preliminary injunction, Petitioner largely seeks the same relief but also requests that the Court enjoin Respondents from restricting his travel to the Dallas-Ft. Worth area, where he resides and works, and from imposing any condition that would interfere with his ability to work and to prepare for his legal proceedings. Doc. 11, at 14-15. He also asks the Court to enjoin Respondents from relocating him outside of this District while this action is pending, and to issue an order to show cause. *Id.* Petitioner's latter two requests were rendered moot in the Court's order for response. *See* Doc. 5. Petitioner also has requested an award of costs and fees. Doc. 1, at 26.

### III.   Standard of review.

An application for a writ of habeas corpus "is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). Habeas corpus relief is warranted only if the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687-88 (2001)).

"When called on to resolve a dispute over a statute's meaning," the Court should "seek[] to afford the [statute's] terms their ordinary meaning at the time Congress adopted them" and to "exhaust all the textual and structural clues bearing on the meaning." *Niz-Chavez v. Garland*, 593 U.S. 155, 160 (2021) (internal quotation marks omitted). This Court's "'sole function' is to apply the law as the Court finds it, . . . not defer to some conflicting reading the government might advance." *Id.* (internal citation omitted); *see also Oklahoma v. U.S. Dep't of Health & Hum. Servs.*, 107 F.4th 1209, 1222 n.11 (10th Cir. 2024) (stating that the court "must independently interpret the statutory

5

phrase irrespective of the parties' positions"), *judgment vacated on other grounds*, 145 S. Ct. 2837 (2025).

## IV.    Discussion.

### A.    The Court has jurisdiction to consider the petition.

Respondents assert Petitioner's arguments are jurisdictionally barred. Doc. 10, at 10, 16. The Court should disagree.

In *Cortes v. Holt*, No. CIV-25-1176-SLP, 2026 WL 147435, at *3 (W.D. Okla. Jan. 20, 2026), which the undersigned incorporates herein, the Court concluded it had subject matter jurisdiction over the detention issue in the Petition, i.e., determining whether mandatory detention under § 1225(b) applies or discretionary detention under § 1226(a) applies pending a decision on Petitioner's removal. This Court, consistent with other district courts throughout the country, has dispensed with arguments by the Government that 8 U.S.C. § 1252(a)(5), (b)(9), and (g) deprive the Court of jurisdiction when a noncitizen challenges their detention under § 1225(b). *Cortes*, 2026 WL 147435, at *2-3; *Cruz-Hernandez v. Noem*, No. CIV-25-1378-D, 2026 WL 18932, at *1 (W.D. Okla. Jan. 2, 2026); *Hasan v. Crawford*, 800 F. Supp. 3d 641, 650 n.7 (E.D. Va. Sept. 19, 2025) ("Federal courts throughout the country have similarly found that these jurisdiction-stripping provisions do not deprive the

6

federal courts of jurisdiction to review a noncitizen's challenge to the legality of his detention." (collecting cases)).

**B.    Section 1226 governs Petitioner's detention.**

Petitioner asserts that Respondents violated the INA by detaining him under the mandatory detention provision in § 1225(b)(2). Doc. 1, at 8-9. He argues this provision does not apply to him because he had previously entered and had been residing in the United States for more than three years. *See id.* at 15-17. So, as someone who is not a recent arrival seeking inspection and admission into the United States, Petitioner asserts his detention is governed—not by § 1225(b)(2)—but by § 1226(a). *Id.* at 16. Respondents contend that Petitioner and other noncitizens who have entered the country without being admitted are applicants for admission under § 1225(a)(1) who are seeking admission under § 1225(b)(2)(A), whether they are passively residing in the country or not. Doc. 10, at 16-19.

Section 1225(a)(1) describes an "applicant[ ] for admission" as "an alien present in the United States who has not been admitted or who arrives in the United States." 8 U.S.C. § 1225(a)(1). According to its plain language, "§ 1225(b)(2)(A) applies 'in the case of an alien who is an *applicant for admission*, if the examining officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be

7

detained for a proceeding under section 1229a of this title.'" *Cortes*, 2026 WL 147435, at *4 (quoting 8 U.S.C. § 1225(b)(2)(A) (emphasis added by *Cortes*)). This section "authorizes the Government to detain certain aliens seeking admission into the country." *Jennings v. Rodriguez*, 583 U.S. 281, 289 (2018).

Section 1226(a), on the other hand, "authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings." *Id.* (emphasis added). "Section 1226(a) sets out the default rule: The Attorney General may issue a warrant for the arrest and detention of an alien 'pending a decision on whether the alien is to be removed from the United States.'" *Id.* (quoting § 1226(a)). "'Except as provided in [Section 1226(c)],' the Attorney General 'may release' an alien detained under § 1226(a) 'on . . . bond' or 'conditional parole.'" *Id.* (quoting § 1226(a)(1)-(2)).

This Court has previously compared §§ 1225 and 1226 and decided noncitizens like Petitioner are entitled to a bond hearing under § 1226. *See, e.g., Cortes*, 2026 WL 147435, at *3-7*; see also Lopez v. Corecivic Cimarron Corr. Facility*, No. CIV-25-1175-SLP, 2026 WL 165490, at *3-7 (W.D. Okla. Jan. 21, 2026). The Court should reach the same result in this case.

Section 1225(b)(2)(A) "unambiguously requires that an 'applicant for admission' also be 'seeking admission' for the section to control," and "[n]oncitizens 'seeking admission' are those who have not effected an entry into

the United States." *Colin v. Holt*, No. CIV-25-1189-D, 2025 WL 3645176, at *4 (W.D. Okla. Dec. 16, 2025). Because Petitioner was paroled into the country over three years ago, he is not subject to § 1225(b)(2)(A)'s mandatory detention requirement. Numerous Judges in this District have held likewise. *See*, *e.g.*, *Ramirez Rojas v. Noem*, No. CIV-25-1236-HE, 2026 WL 94641, at *2 (W.D. Okla. Jan. 13, 2026) ("The court also agrees that § 1226(a), not § 1225(b)(2)(A), governs petitioner's detention."); *Valdez v. Holt*, No. CIV-25-1250-R, 2025 WL 3709021, at *3 (W.D. Okla. Dec. 22, 2025) ("Because Petitioner has been unlawfully living in the United States for many years without seeking admission, this provision does not apply to him. Instead, Petitioner's detention is controlled by § 1226(a)."); *Escarcega v. Olson*, No. CIV-25-1129-J, 2025 WL 3243438, at *2 (W.D. Okla. Nov. 20, 2025) ("[B]ased on the plain language of §—1225(b)(2)(A), the phrase 'seeking admission' only applies to noncitizens who are presently and actively seeking lawful entry into the United States at the border." (internal quotation marks and alterations omitted));[4] *see also* *Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048, 1061 (7th Cir.

---

[4]     *But see Gutierrez Sosa v. Holt*, No. CIV-25-1257-PRW, 2026 WL 36344, at *3 (W.D. Okla. Jan. 6, 2026) (holding § 1225 applied to the petitioner's detention); *Montoya v. Holt*, No. CIV-25-1231-JD, 2025 WL 3733302, at *12 (W.D. Okla. Dec. 26, 2026) (same).

2025) ("[I]t is Congress's prerogative to define a term however it wishes, and it has chosen to limit the definition of an 'applicant for admission' to 'an alien present in the United States who has not been admitted or who arrives in the United States.' 8 U.S.C. § 1225(a)(1). It could easily have included noncitizens who are "seeking admission" within the definition but elected not to do so.").[5] As well as determining that if "all 'applicants for admission' are also 'seeking admission,' then § 1225(b)(2)(A)'s inclusion of the phrase 'seeking admission' would be redundant and courts should avoid statutory interpretations that 'make[ ] any part [of the statute] superfluous.' " *Escarcega*, 2025 WL 3243438, at *3 (*quoting Fuller v. Norton*, 86 F.3d 1016, 1024 (10th Cir. 1996)).

Respondents argue the Court should reconsider because Petitioner's asylum request transforms him into one who is actively seeking admission into the country. Doc. 10, at 15. Petitioner's asylum application does not convert him into an "applicant for admission." *See, e.g., Malacidze v. Noem*, No. CIV-25-1527-D, 2026 WL 227155, at *3 (W.D. Okla. Jan. 28, 2026) (concluding "a pending asylum application does not render § 1225(b)(2)(A) applicable to Petitioner"); *Li v. Grant*, No. CIV-25-1426-HE, 2026 WL 147438, at *1 (W.D.

---

[5]    *But see Avila v. Bondi*, 170 F.4th 1128, 1137-38 (8th Cir. 2026) (applying § 1225 to a similar habeas challenge); *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 506 (5th Cir. 2026) (Same).

Okla. Jan. 20, 2026) (finding "§ 1225(b)(2)(A) does not apply even though petitioner filed an application for asylum").

When Petitioner was detained after residing in the country for over three years, he was not subject to mandatory detention under § 1225(b)(2)(A). Instead, Petitioner is subject to § 1226 and is at least "entitled to a prompt bond hearing before an immigration judge pursuant to § 1226(a)." *Cortes*, 2026 WL 147435, at *7.

> **C.      Respondents violated their own regulations and Petitioner's due process rights when they revoked Petitioner's parole without written notice or a reasoned explanation of changed circumstances.**

Petitioner maintains that Respondents violated their own regulations and his due process rights when they revoked his grant of parole under § 1182(d)(5) without notice or a showing of changed circumstances. Doc. 1, at 17-21, 20-23; Doc. 16, at 3-6. He argues that "[t]here were no changes in Petitioner's conduct, circumstances, or risk profile that would justify his revocation of parole." Doc. 11, at 11. And that he had a protected liberty interest in his freedom from physical custody due to his conditional release. *Id.* at 11-12; Doc. 16, at 5-7. Respondents have not responded to these assertions.

"The Fifth Amendment's Due Process Clause forbids the Government to deprive any person of liberty without due process of law. Freedom from

11

imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas*, 533 U.S. at 690 (internal quotation marks and alterations omitted); *cf. Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) ("'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings." (internal quotation marks omitted)). Individuals who have been conditionally released from detention have a protected interest in their "continued liberty." *Young v. Harper*, 520 U.S. 143, 147 (1997). "This is true even when the released individual is subject to extensive conditions of release." *Villanueva v. Tate*, 801 F. Supp. 3d 689, 704 (S.D. Tex. 2025).

When the government promulgates regulations "with the force and effect of law," agencies are bound to follow their own "existing valid regulations." *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 265, 268 (1954). Pertinent here, "[t]he statutes and regulations governing immigration and removal proceedings afford important procedural safeguards to detainees." *Villanueva*, 801 F. Supp. 3d at 698-99.

### 1.    Statutory and regulatory framework.

Petitioner states he arrived at the border for inspection in 2022 and ICE paroled him into the United States two days later under 8 U.S.C. § 1182(d)(5). Doc. 1, at 17. This section grants discretion to officials in the Department of

Homeland Security (DHS) to "parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States." 8 U.S.C. § 1182(d)(5)(A). Any revocation of this parole must be based on a decision by a DHS official that either "the purpose for which parole was authorized" has been accomplished or that "neither humanitarian reasons nor public benefit warrants the continued presence of the [noncitizen] in the United States." 8 C.F.R. § 212.5(e)(2)(i); *see also* 8 U.S.C. § 1182(d)(5)(A) (stating the DHS Secretary may revoke parole "when the purposes of such parole . . . have been served"). And the parole will only be terminated when "written notice" of this decision is served on the noncitizen. 8 C.F.R. § 212.5(e)(2)(i).

### 2. Respondents did not comply with the applicable regulations before revoking Petitioner's parole.

As Petitioner points out in his reply to Respondents' response to the habeas petition, "Respondents fail to account for Petitioner's parole under § 1182(d)(5)." Doc. 16, at 3. They do not answer Petitioner's claim that they revoked his parole without notice or a reasoned decision demonstrating changed circumstances warranting his detention. The most they provide to the Court is a copy of Petitioner's Notice to Appear issued on December 10, 2024.

13

Doc. 10, Ex. 3. But this Notice did not contain information about his parole and, as Respondents admit, DHS did not take Petitioner into custody until January 2026. Doc. 1, at 14. So the Court concludes Respondents violated their own regulations when they revoked Petitioner's parole without notice of a reasoned decision for the revocation. *See, e.g.*, *Munoz Materano v. Arteta*, 804 F. Supp. 3d 395, 418 (S.D.N.Y. 2025) ("Respondents provide no indication that an individualized determination was made as to the revocation of Munoz Materano's parole; nor do they articulate, even now, either that the purpose for which Munoz Materano's parole was authorized has been accomplished, nor that neither humanitarian reasons nor public benefit warrants his continued presence in the United States."); *Y-Z-L-H v. Bostock*, 792 F. Supp. 3d 1123, 1137-38 (D. Or. 2025) ("This is a grant of discretionary authority, but it has a mandatory requirement—parole may be terminated or revoked only when in the Secretary's opinion the parole's purposes have been met.").

### 3. Respondents violated Petitioner's due process rights when they summarily revoked his parole.

This Court analyzes Petitioner's due process claim to determine whether he has a protected liberty interest under the Due Process Clause, and what process is necessary to ensure any deprivation of that liberty interest aligns with the Constitution. *See Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460

(1989). In examining the necessary process, the Court turns to the three factors set forth in *Mathews v. Eldridge*: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. 319, 335 (1976). Petitioner maintains that these factors weigh in favor of his release. Doc. 11, at 9-14. And the undersigned agrees.

"When the government grants [a noncitizen] parole into the country, it creates a liberty interest intimately tied to freedom from imprisonment." *Sanchez v. LaRose*, 2025 WL 2770629, at *3 (S.D. Cal. Sept. 26, 2025); *see also Iza v. Arnott*, 2026 WL 67152, at *3 (W.D. Mo. Jan. 8, 2026) ("Individuals released on parole or other forms of conditional release have a liberty interest in their 'continued liberty.'" (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972))); *Sahil v. De Anda-Ybarra*, 2026 WL 560216, at *3 (D.N.M. Feb. 27, 2026) (finding "that noncitizens acquire a liberty interest once released from immigration detention"). Petitioner's interest in physical freedom "is the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *see also Zadvydas*, 533 U.S. at 690 (stating that an individual's interest in

15

being free from detention "lies at the heart of the liberty that [the Due Process] Clause protects"). Respondents deprived Petitioner of his protected status when they revoked his parole and placed him in custody.

Turning to the *Mathews* factors, the Court finds that Petitioner has a significant private interest in remaining free from detention after spending years on parole. To be sure, "Congress may make rules as to aliens that would be unacceptable if applied to citizens." *Demore v. Kim*, 538 U.S. 510, 522 (2003). But that power remains "subject to important constitutional limitations." *Zadvydas*, 533 U.S. at 695. And it does not erase Petitioner's significant interest in remaining free from detention.

Respondents do not challenge Petitioner's assertions that he was "granted parole and released [] from custody" in  March 2022, that he "appeared at all required check-in appointments, maintained continuous residence in Dallas, Texas, remained steadily employed, obtained and renewed employment authorization and a valid driver's license, and was never arrested, charged, or accused of any criminal or immigration violation." Doc. 1, at 18. During this time his interest in release grew even stronger as he worked and presumably "form[ed] the other enduring attachments of normal life." *Morrissey*, 408 U.S. at 482. The first *Mathews* factor favors Petitioner.

16

Second, the Court considers "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." *Mathews*, 424 U.S. at 335. The risk of an erroneous deprivation of Petitioner's liberty interest is considerable where he has not received any notice of the reason for his parole revocation and simple procedures exist which would mitigate those risks.

"Constitutionally inadequate notice also often leads to constitutionally inadequate opportunity to be heard, because opportunity to be heard must be meaningful to be constitutionally sufficient." *Saqib v. Andrews*, 2026 WL 350830, at *6 (E.D. Cal. Feb. 9, 2026). Petitioner received no procedural safeguards to determine whether the revocation of his parole and his detention were justified, and thus Respondents have detained him without any stated cause. This factor weighs in Petitioner's favor. *See, e.g.*, *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1322 (W.D. Wash. 2025) ("That the Government may believe it has a valid reason to detain Petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process."); *see also Gualpa-Lumbi v. Hoover,* 2026 WL 452351, at *11 (N.D. Ohio Feb. 18, 2026) ("[Petitioner] was previously released and permitted to go about living for years in the United States during the pendency of his

immigration proceedings before being detained in 2025. . . . [which] show[s] that [Petitioner] is at risk of being erroneously deprived of his freedom.").

Finally, the Court considers the Government's interest, including any fiscal or administrative burdens. *Mathews*, 424 U.S. at 335. "While this Court recognizes that the government has an interest in enforcing immigration laws, the government's interest in re-detaining [P]etitioner without adequate notice and an opportunity to challenge the revocation of his release is low." *Saqib*, 2026 WL 350830, at *6; *see, e.g.*, *Diaz v. Kaiser*, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) ("[T[he Court concludes that the government's interest in re-detaining Petitioner . . . is 'low,' particularly in light of the fact that Petitioner[] has long complied with his reporting requirements."). And the Court can discern no significant administrative or fiscal burden associated with placing the burden on the government to follow its own regulations. *See, e.g.*, *Iza,* 2026 WL 67152, at *3 ("An alien's opportunity to be heard regarding the revocation of his parole is only meaningful if the government comports with its own internal standards regarding parole revocation."). Especially given that Petitioner's detention was not deemed necessary for almost four years.

The undersigned concludes Respondents breached their own regulations and violated Petitioner's due process rights when they summarily revoked his parole. Based on these findings, the undersigned recommends the Court grant

18

the habeas corpus petition and release Petitioner from detention subject to the same conditions that governed his earlier parole.

**D.     The Court should decline to consider Petitioner's APA claim.**

Petitioner alleges Respondents violated the APA because they "failed to consider [his] individualized circumstances and extraordinary compliance history." Doc. 1, at 21.

Because Petitioner's claim for relief "'necessarily imply the invalidity' of [his] confinement," his claim "fall[s] within the 'core' of the writ of habeas corpus and thus must be brought in habeas." *J.G.G.*, 604 U.S. at 672; *see also id.* at 674 ("[G]iven 5 U.S.C. § 704, which states that claims under the APA are not available when there is another 'adequate remedy in a court,' I agree with the Court that habeas corpus, not the APA, is the proper vehicle here.") (Kavanaugh, J. concurring); *Soberanes,* 388 F.3d at 1310 ("Challenges to immigration detention are properly brought directly through habeas." (citing *Zadvydas,* 533 U.S. at 687). The Court should deny Petitioner's request for relief under the APA.

## V.    Recommendation and notice of right to object.

For the reasons set forth above, the undersigned recommends the Court **grant** Petitioner's habeas petition and order his immediate release from detention.[6] Specifically, the undersigned recommends the Court:

- order Respondents to immediately release Petitioner from their custody;

- enjoin Respondents from re-detaining Petitioner without notice and a pre-deprivation hearing before a neutral decisionmaker;

- order Respondents to submit a declaration pursuant to 28 U.S.C. § 1746 affirming they have released Petitioner from custody.[7]

The undersigned advises the parties of their right to file an objection to this Report and Recommendation with the Clerk of this Court by April 22,

---

[6]    Should the Court adopt this Report and Recommendation, it should find Petitioner's remaining requests for relief to be moot.

[7]    To the extent Petitioner may be entitled to an award of fees under the Equal Access to Justice Act fees and costs (EAJA) as a prevailing party, Petitioner must seek that award separately after a final judgment. 28 U.S.C. § 2412(d)(1)(B); *see also Daley v. Ceja*, 158 F.4th 1152, 1166 (10th Cir. 2025) (interpreting "EAJA's broad language to unambiguously authorize fees in habeas actions challenging immigration detention").

2026, in accordance with 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72.[8] The undersigned further advises the parties that failure to make timely objections to this Report and Recommendation waives the right to appellate review of both factual and legal questions contained herein. *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991). This Report and Recommendation disposes of the issues referred to the undersigned Magistrate Judge in the captioned matter.

      **ENTERED** this 17th day of April, 2026.

SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE

---

[8]      Given the expedited nature of these proceedings, the undersigned has reduced the typical objection time to this Report and Recommendation to five days. *See* Fed. R. Civ. P. 72(b)(2) advisory committee's note to 1983 addition (noting that rule establishing 14-day response time "does not extend to habeas corpus petitions, which are covered by the specific rules relating to proceedings under Sections 2254 and 2255 of Title 28."); *see also Whitmore v. Parker,* 484 F. App'x 227, 231, 231 n.2 (10th Cir. 2012) ("The Rules Governing § 2254 Cases may be applied discretionarily to habeas petitions under § 2241" and that "while the Federal Rules of Civil Procedure may be applied in habeas proceedings, they need not be in every instance – particularly where strict application would undermine the habeas review process").